UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JUAN ESPARZA-RAMIREZ,                      Civil No. 06-12 (DWF/SRN)

       Petitioner,

   v.                                           **REPORT AND RECOMMENDATION**

LISA J. HOLLINGSWORTH, Warden,

       Respondent.

---

       Juan Esparza-Ramirez, Federal Correctional Institution - Sandstone, P.O. Box 1000, Sandstone, Minnesota, 55072, Petitioner, pro se.

       Richard Newberry, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

       This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner, Juan Esparza-Ramirez, for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner claims that he has been wrongly deprived of certain "good time credit," and that Respondent therefore intends to detain him in prison beyond his proper release date.  Respondent has filed a response, (Docket Nos. 6 and 7), contending that Petitioner is not entitled to any relief in this matter.

       The case has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that Petitioner's claims must be rejected, and this action must be dismissed with prejudice.

**I. BACKGROUND**

       Petitioner is an alien from Mexico.  In 1997, he pleaded guilty to a federal drug law offense in the United States District Court for the District of Nebraska.  He was sentenced

to 210 months in federal prison, to be followed by five years of supervised release. Petitioner is currently serving his sentence at the Federal Correctional Institution in Sandstone, Minnesota, ("FCI-Sandstone").

As a federal prison inmate, Petitioner can earn Good Conduct Time, also referred to as "GCT" or "good time credit," pursuant to 18 U.S.C. § 3624(b). This statute provides as follows:

> "**(b) Credit toward service of sentence for satisfactory behavior.--**
>
> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.  Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree.  Credit that has not been earned may not later be granted.  Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.
>
> (2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.
>
> (3) The Attorney General shall ensure that the Bureau of Prisons has in effect an optional General Educational Development program for inmates who have not earned a high school diploma or its equivalent.
>
> (4) Exemptions to the General Educational Development requirement may be made as deemed appropriate by the Director of the Federal Bureau of Prisons.

The federal Bureau of Prisons, ("BOP"), has promulgated a regulation and a "program statement," which implement the directives of § 3624(b). The regulation, set forth at 28 C.F.R. § 523.20, provides that –

> "For inmates serving a sentence for an offense committed on or after April 26, 1996, the Bureau will award
>     (1) 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
>     (2) 42 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma."

28 C.F.R. § 523.20(c). The apposite BOP program statement, P.S. 5884.01, (effective November 3, 1997), mimics the regulation, (§ 523.20(c)), and provides some additional guidance for BOP employees who supervise prisoner education. A copy of P.S. 5884.01 is included in the present record as "Attachment C" of the Declaration of Ann C. Kinyon, ("Kinyon Decl."). (Docket No. 7.) Both the regulation and P.S. 5884.01 indicate that a prisoner is eligible for 54 days of good time credit per year if he or she has a high school diploma or is making satisfactory progress toward a GED, ("General Education Development"), but otherwise the prisoner is eligible for only 42 days of good time credit per year.

A related program statement, P.S. 5350.28, dated December 1, 2003, "describe[s] to education staff and inmates how the Bureau operates its literacy program." (Kinyon Decl., Att. B.) P.S. 5350.28 indicates that (a) an inmate is generally responsible for obtaining verification of his high school diploma or GED, (unless such verification is provided by the inmate's pre-sentence report or elsewhere), (b) the inmate has 60 days to

produce such verification, and (c) an inmate's education records should be updated whenever there is satisfactory proof that he has a high school diploma or a GED, and when he starts or stops making satisfactory progress toward a GED.  (Id.)[1]

In this case, Petitioner was sentenced on March 19, 1998, and he entered the federal prison system the following month.  (Kinyon Decl., Att. A.)  A report entitled "Sentencing Monitoring Good Time Data," (Kinyon Decl., Att. G), indicates that Petitioner received 243 days of pre-sentence jail-time credit toward his sentence, which presumably is for time he spent in custody after his arrest in July 1997, and before his sentencing in March 1998.  The Good Time Data report, (id.), further indicates that Petitioner's good time credits have been calculated and credited on an annual basis, beginning with the year of July 19, 1997, (when Petitioner apparently first started earning credit toward his sentence), to July 18, 1998.  It appears that Petitioner's annual good time credits have been calculated and credited as of July 19th of each ensuing year.  (Id.)

When Petitioner entered federal prison in April 1998, he was immediately informed that he would have to produce a copy of his high school diploma, or work toward a GED, in order to earn all available good time credits – i.e., 54 days per year.  Petitioner candidly acknowledges that "[f]rom the very onset of his arrival at the FCI facility, the Education Department demanded that the Petitioner produce a copy of his high school diploma."

---

[1] P.S. 5350.28 indicates that it is a "revision," which "rewrites our implementing text in Plain Language," and "clarifies" certain aspects of the literacy program.  (Id., p. 3.)  This obviously suggests that P.S. 5350.28 was not entirely new when it was promulgated in December 2003.  However, the present record provides no information about any earlier version of the program statement that might have been in effect prior to December 2003.

(Petition, [Docket No. 1], p. 3.)[2] Even though Petitioner did not promptly produce his high school diploma, the BOP's records indicate that he still received the maximum amount of good time credit, (54 days), at the end of the first full year for which he was given credit toward his sentence – i.e., from July 19, 1997, to July 18, 1998. (Kinyon Decl., Att. G.)

Petitioner apparently was informed sometime during 1998, (perhaps on more than one occasion), that he would not continue to be eligible for 54 days per year of good time credit, unless he produced his high school diploma, or else enrolled in a prison-sponsored GED program. In January 1999, Petitioner did enroll in a GED program, and if he had continued to make satisfactory progress toward his GED, he presumably would have continued to earn 54 days of good time credit per year. However, Petitioner "lacked interest and was making poor progress in the program," and dropped out after six months. (Kinyon Decl., ¶ 7.) Because Petitioner was not making satisfactory progress toward his GED, and he still had not produced his high school diploma, he received only 42 days of good time credit for the annual period of July 19, 1998, to July 18, 1999. (Kinyon Decl., Att. G.) Furthermore, Petitioner continued to earn only 42 days of good time credit for each of the next four years. (Id.) Thus, for the five-year period between July 19, 1998, and July 18, 2003, Petitioner earned a total of only 210 days of good time credits, (42 days/year x 5 years = 210 days), instead of 270 days, (54 days/year x 5 years = 270 days), which he could have earned if he had promptly produced his high school diploma, or if he had

---

[2] Petitioner further states that he was required to produce his high school diploma "despite the fact that the Petitioner's PreSentence Investigation Report indicated that he possessed a high school diploma." (Petition, p. 3.) In fact, however, the presentence report indicates that Petitioner completed only "nine grades of formal education while in Mexico." (Kinyon Decl., Att. F, p. 4.) Moreover, this information was provided by Petitioner himself, and had "not been verified." (Id.)

5

continued to make satisfactory progress toward his GED. In short, Petitioner lost 60 potential days of good time credit during that five-year period.[3]

Petitioner claims that he diligently tried to get a copy of his high school diploma. According to the present habeas corpus petition:

> "[T]he Petitioner immediately wrote a letter to his high school in Mexico, requesting a copy of his high school diploma, to no avail. Eight (8) months later, the Petitioner gave Power-of-attorney to his cousin in Mexico to obtain a copy of his high school diploma. Nevertheless, amid the bureaucratic hurdles and administrative red-tape, and his cousin's complacency, it wasn't until March of 2004 before he could receive and provide a copy of his high school diploma to the Education Department at FCI Sandstone."

(Petition, p. 3.)

The record sheds no light on how Petitioner finally was able to produce a copy of his high school diploma, but he apparently did so in March 2004. As a result, the BOP immediately changed its records regarding Petitioner's education status, and his good time credit accrual rate. (Kinyon Decl., Att. E.)

Although Petitioner did not produce his high school diploma until March 2004, he still received the maximum 54 days of good time credit for the full-year period of July 19, 2003, to July 18, 2004. (Id., Att. G.) Absent disciplinary sanctions, or some other unexpected development, Petitioner presumably will continue to earn 54 days of good time credit per year until he completes his sentence. His projected release date, assuming he continues to earn all 54 days per year of available good time credit, is December 8, 2012.

---

[3] Although Petitioner states that he lost 56 days of good time credit, (Petition, p. 4), the BOP's records seem to indicate that he actually lost 60 days. This discrepancy, however, is immaterial, because the Court finds that Petitioner is not entitled to reinstatement of any good time credit, for the reasons discussed below.

After Petitioner produced his high school diploma, and renewed his eligibility for up to 54 days of good time credit per year, he began to seek reinstatement of the 12 days per year of good time credit that he had lost during the five-year period before he produced his diploma. He pursued his quest for reinstatement of his lost good time credit through the administrative remedy procedures provided by the BOP. See 28 C.F.R. §§ 542.10-.19. First, Petitioner sent a written administrative remedy request to the Warden at FCI-Sandstone. (Kinyon Decl., Att. H.) The Warden denied Petitioner's request, noting that Petitioner had been "housed at FCI-Sandstone on and off since February 08, 2000, and [had] shown little or no interest in getting [his] GED or verification of [his] high school diploma." (Id.)

Petitioner appealed the Warden's decision to the BOP's Regional Office, but that appeal also was denied. (Id.) Petitioner then took a final administrative appeal to the BOP's Central Office, but that appeal was denied as well. The written response from the Central Office, ("Administrator National Inmate Appeals"), explained that:

> "[Y]ou failed to provide staff with verification of a high school diploma and subsequently withdrew from the Literacy [GED] Program. Your GED status was changed to GED UNSAT [meaning that Petitioner was not making satisfactory progress toward a GED] and you were precluded from receiving the maximum amount of GCT (54 days per year) allowed in accordance with P.S. 5884.01. Upon receipt and verification of your high school diploma, your status was changed to GED HAS, [meaning that Petitioner has a GED or high school diploma], allowing you to earn the maximum amount of GCT. Your failure to provide the documentation and decision to withdraw from the Literacy Program negatively effected the rate at which you earned GCT for the award periods in question."

(Id.) Thus, Petitioner's request for reinstatement of his lost good time credits was denied, on the merits, at all three steps of the BOP administrative remedy process.

7

After Petitioner exhausted his administrative remedies, (see Kinyon Decl., ¶ 12), he filed his present petition seeking federal habeas corpus relief. He now claims that he has been deprived of his constitutional rights to due process and equal protection, because the BOP has refused to reinstate the days of good time credit that he lost before he produced his high school diploma. The Court finds, for the reasons discussed below, that Petitioner is unable to sustain his due process and equal protection claims.

## II. DISCUSSION

### A. Due Process

To succeed on a due process claim, the claimant must show that he has been deprived of some constitutionally protected liberty or property interest, without being afforded the procedural benefits of due process. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). See also Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (A "procedural due process claim is reviewed in two steps. The first question is whether [the claimant] has been deprived of a protected liberty or property interest. [Citations omitted] If he does have a protected interest, we then consider what process is due."), pet. for cert. filed, Feb. 9, 2007.

Here, Respondent contends that Petitioner does not have a viable due process claim, because he was not deprived of any liberty interest warranting the benefits of due process. According to Respondent, "[t]o establish the existence of a liberty interest, a prisoner must show that he has been subjected to an 'atypical and significant hardship.... in relation to the ordinary incidents of prison life,' or that the government's action 'will inevitably affect the duration of his sentence.'" Government Response To Petition For Writ

Of Habeas Corpus Pursuant To 28 U.S.C. § 2241," (Docket No. 6), p. 6, (emphasis added). In the very next paragraph, however, Respondent states that "the earning of GCT affects the duration of petitioner's sentence." (Id.) By acknowledging that Petitioner's good time credits affect the duration of his sentence, Respondent seems to also be acknowledging that Petitioner's interest in good time credits should indeed be viewed as a liberty interest for due process purposes. Furthermore, federal courts have often held that prisoners do have a liberty interest in good time credits, because they directly and inevitably affect the duration of a prisoner's confinement. See e.g., Louis v. Department of Correctional Services of Nebraska, 437 F.3d 697, 700 (8th Cir.) ("inmates possess a protected liberty interest in not being arbitrarily deprived of their good-time credits, and thus NSP [Nebraska State Penitentiary] must observe due process when the credits are in issue"), cert. denied, 127 S.Ct. 355 (2006); Bridgeman v. Ault, No. 98-3681SI (8th Cir. 1999), 1999 WL 425834 at *1 (unpublished opinion) ("[a]n inmate must be afforded procedural protections before being deprived of a protected liberty interest in good-time credits"), citing Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).

Thus, for present purposes, the Court will assume, (without deciding), that Petitioner's interest in the good time credits at issue in this case should be viewed as a liberty interest, which could not properly be taken from him without the benefit of due process. Petitioner has not established, however, that he was denied due process.

In the context of prison disciplinary proceedings, there are three fundamental requirements of due process: (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate resolution of the charges. Wolff, 418 U.S. at 563-64. Although Wolff is not directly

applicable here, because this case does not involve a prison disciplinary matter, the three requirements of due process prescribed in Wolff provide useful guidance for the analysis of Petitioner's current due process claim.

The first hallmark of due process is notice.  See Coffman v. Trickey, 884 F.2d 1057, 1060 (8th Cir. 1989) ("[a] fundamental tenet of due process is that to be sanctioned one must have received fair notice that one's allegedly violative conduct was prohibited"), cert. denied, 494 U.S. 1056 (1990).  In this case, Petitioner has acknowledged that immediately after he entered the federal prison system, he was informed that he would have to produce his high school diploma, or else participate in a GED program.  (Petition, p. 3.)  He may not have been fully aware of all of the specific provisions of all of the apposite regulations and program statements, (although even that much is unclear), but he certainly knew that he could not earn 54 days per year of good time credit, unless he produced a high school diploma or made satisfactory progress toward a GED, and he certainly knew that he was responsible for obtaining a copy of his high school diploma.[4]  Indeed, Petitioner does not even suggest that he was unaware of the requirements for obtaining the full 54 days of available good time credit.  Therefore, Petitioner cannot sustain his due process claim

---

[4] In Petitioner's Reply to the Government's Response, he claims that he was never notified that, according to the P.S. 5350.28, the BOP might try to help him get a copy of his high school diploma, if he requested such assistance. (See Petitioner's Reply, [Docket No. 9], pp. 2-3; Kinyon Decl., ¶ 5.)  However, Petitioner has not cited, (and the Court is not independently aware of), any legal authority which says that due process requires the government to inform individuals about resources that might be available to help them avoid the loss of property or liberty interests.  In the absence of some clear legal authority on the issue, the Court cannot find that the BOP had a constitutional obligation to inform Petitioner about the assistance provision of P.S. 5350.28.  See Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having... prison officials follow prison regulations").

based on lack of notice.

Nor can Petitioner show that he was given no opportunity to vindicate his claim for his lost good time credits. The BOP gave him a chance to present his arguments at each of the three stages of the BOP's administrative remedy process. His arguments were heard and decided on the merits at each stage of that process. Petitioner obviously disagrees with the BOP's response to his claim, but the record clearly shows that he was afforded three opportunities to present his arguments, and those arguments were received, considered and addressed on the merits. See Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir.1998) ("[a] procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures"). See also Travieso v. Federal Bureau of Prisons, Warden, No. 06-13358, (11th Cir. 2007), 2007 WL 496638 at *2 (unpublished opinion) ("the BOP's administrative remedy process provided [federal prisoner] with any required due process").

Finally, Petitioner cannot show that his good time credit request was denied based on caprice or ill-will, rather than rules and reason. The BOP has adopted regulations and program statements that are designed to implement the congressional mandate set forth at 18 U.S.C. § 3624(b) – i.e., that in awarding good time credit, "the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree." The regulations and program statements put the onus on the prisoner to either produce a high school diploma, or else make satisfactory progress toward a GED. If neither of those conditions is met, then the prisoner cannot earn the maximum available good time credits. That is what the regulations and program statements provide, and that is why the Petitioner did not

earn all available good time credits during the years when he had not yet produced his high school diploma, and he was not making satisfactory progress toward his GED.

The Court further notes that § 3624(b)(1) states that "Credit that has not been earned may not later be granted." This sentence appears to expressly prohibit the BOP, (and the Court), from granting Petitioner any additional good time credit that he failed to earn before. In other words, the governing statute, (which must take precedence over any regulation or program statement), seems to indicate that the BOP cannot award lost good time credits, retroactively, after a prisoner produces a high school diploma. For this additional reason, the Court finds that the BOP did not act arbitrarily or unreasonably in failing to grant Petitioner's request for retroactive reinstatement of his lost good time credits.

While there is little case law directly applicable to Petitioner's current claim, there is at least one reported case that is very similar to this one. In that case, Fernandez v. Nash, No. 04-4112 (NLH), (D.N.J. 2006), 2006 WL 1966647, the Court rejected a federal prisoner's request for retroactive reinstatement of lost good time credits. The prisoner in Fernandez, like Petitioner here, did not earn all available good time credits, because he did not promptly produce his high school diploma, (from the Dominican Republic), and he did not make satisfactory progress toward his GED. After the prisoner produced his high school diploma, he applied for a writ of habeas corpus, to compel the BOP to reinstate the 36 days of good time credit that he lost during the three years when he was not working on his GED, and he had not yet produced his diploma. The district court rejected Petitioner's claims, concluding that –

> "nothing in 18 U.S.C. § 3624(b), or any other statutory provision cited to the Court, appears to grant petitioner the right to full time credit for the time he spent out of the GED program and prior to the proffered diploma.  In sum, the BOP acted within its discretion to deny the highest level of good time credits to Petitioner, who, having voluntarily withdrawn from the GED Program, was not 'during the relevant period' earning or making satisfactory progress toward a GED credential or high school diploma within the language of § 3624(b).  The Court will therefore dismiss the Petition with prejudice."

Id. at * 4.  This Court agrees with the reasoning and conclusion of Fernandez.

### B. Equal Protection

Petitioner also claims that his constitutional right to equal protection has been violated, because he was given only 60 days to obtain his high school diploma.  According to Petitioner, this policy violates the Constitution's equal protection clause, because it purportedly "discriminates against foreign national inmates who have to obtain their documents from institutions in foreign countries."  (Petition, p. 5.)  This argument must be rejected for two reasons.

First, as Respondent has correctly noted, the 60-day rule that Petitioner is challenging is facially neutral.  In other words, the rule, on its face, is equally applicable to all inmates, regardless of where they might have been educated – in the United States or abroad.  Petitioner obviously believes, however, that the 60-day rule has a disparate impact on inmates who have received a high school diploma outside of the United States.

In order for Petitioner to prevail on his "disparate impact" theory, he would have to prove that the 60-day rule was specifically designed to adversely effect non-American high school graduates.  See Spina v. Department of Homeland Security, 470 F.3d 116, 131 (2nd Cir. 2006) (where the law at issue is "facially neutral," an equal protection claimant "must show more than a disparate impact... to establish a denial of equal protection; he must

demonstrate discriminatory purpose"). As explained in <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 306 (5th Cir.), <u>cert</u>. <u>denied</u>, 522 U.S. 995 (1997):

> "The Supreme Court has instructed us time and again... that disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted.... Thus, a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." (Citations omitted.)

In this case, Petitioner has made no effort to show that the BOP's 60-day rule was deliberately intended to harm non-American prisoners, and the Court is confident that he could not substantiate that proposition. For this reason alone, Petitioner's equal protection claim must be rejected.

In addition, the Court finds that, as a practical matter, the 60-day period for obtaining a high school diploma is simply irrelevant in Petitioner's particular case. The record shows that, notwithstanding the 60-day rule, Petitioner received his full 54 days of good time credit for the first <u>full year</u> of his sentence, even though he had not yet produced his high school diploma. (<u>See</u> p. 5, <u>supra</u>; Kinyon Decl., Att. G.) Petitioner's earned good time credits were not reduced to 42 days per year until he reached the end of the second year of his sentence, and he had withdrawn from the GED program. (<u>Id</u>.) Furthermore, Petitioner did not actually produce his high school diploma until <u>six years</u> after he entered the federal prison system. In light of these circumstances, it is a bit absurd for Petitioner to blame his lost good time credits on the allegedly discriminatory effect of the BOP's 60-day rule.[5]

---

[5] Petitioner also contends that he was denied equal protection because other inmates have been awarded additional good time credit, retroactively, after producing their high school diplomas. (Reply, [Docket No. 9], p. 6.) This argument must be summarily rejected, because Petitioner has not offered, (or even identified), any specific evidence to

14

### III. CONCLUSION

For the reasons discussed above, the Court finds that Petitioner is unable to establish that the BOP violated his federal constitutional rights by failing to retroactively award him the good time credits that he lost during the years when he did not provide his high school diploma, and he did not make progress toward his GED. The Court will therefore recommend that Petitioner's habeas corpus petition be denied, and that this action be dismissed with prejudice.

### IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Docket No. 1), be DENIED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: April 3, 2007

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 18, 2007,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.

---

support it. Moreover, the Fernandez case, (see pp. 12-13, supra), refutes Petitioner's suggestion that inmates normally receive the retroactive award of good time credit that he is seeking here.